UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSEPH PEREZ,

Plaintiff,

v.

JAMES DZURENDA, et al.,

Defendants.

Case No. 3:25-cv-00713-ART-CSD

ORDER

This action began with a pro se civil-rights complaint filed under 42 U.S.C. § 1983 by a state prisoner. Plaintiff has applied to proceed *in forma pauperis*. (ECF Nos. 1, 4). Plaintiff also moves the Court on an emergency basis for a temporary restraining order ("TRO"). (ECF No. 9). Based on the financial information provided, the Court finds that Plaintiff is unable to prepay the full filing fee in this matter, so it grants his *in forma pauperis* application.

The Court entered a screening order on June 8, 2026. (ECF No. 5). The screening order imposed a 90-day stay and the Court entered a subsequent order in which the parties were assigned to mediation by a court-appointed mediator. (ECF Nos. 5, 8). The parties did not settle at mediation. (ECF No. 11). For the reasons stated below, the Court denies Plaintiff's motion for a TRO and directs service upon the defendants.

## I. DISCUSSION

### A. TRO Legal Standard

Restraining orders and preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The legal standard for obtaining a temporary restraining order and the legal standard for obtaining a preliminary injunction are "substantially identical." *See Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter*, 555 U.S. at 20. The Supreme Court clarified the standard for these forms of equitable relief in *Winter*, instructing that the plaintiff "must establish that he is

likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction [or restraining order] is in the public interest." 555 U.S. at 20. The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (citation modified).

But a plaintiff who seeks a mandatory injunction—one that goes beyond simply maintaining the status quo during litigation—bears a "doubly demanding" burden: "[he] must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The Ninth Circuit has cautioned that mandatory injunctions are "particularly disfavored" and "should not issue in doubtful cases." *Id.* (citation modified). And the PLRA similarly instructs that any restraining order or preliminary injunction granted with respect to prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

A prisoner seeking a remedy for unsafe conditions does not have to await a tragic event like an actual assault before obtaining relief. *Farmer*, 511 U.S. at 845. But "an inmate seeking an injunction on the ground that there is a contemporary violation of a nature likely to continue must adequately plead such a violation . . . ." *Id*. at 845–46 (citation modified). And the inmate must demonstrate that prison officials are "knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so . . . ." *Id*. at 846. But the fact that "prison officials' current attitudes and conduct must be assessed in an action for injunctive relief does not mean, of course, that

inmates are free to bypass adequate internal prison procedures and bring their health and safety concerns directly to court." *Id.* (citation modified).

**B. Analysis**

In screening Plaintiff's complaint, the Court allowed only a Fourth Amendment unreasonable strip-search claim to proceed against Quanttrini and Robert Suwe. (ECF No. 5 at 13–14). Plaintiff moves for a TRO to enjoin defendant Quanttrini and non-parties Medina, Boiling, Omler, and Smith from retaliating against him for filing this lawsuit. (ECF No. 9 at 2). Plaintiff generally argues that these correctional officers stand together outside the chow hall most days and, since July 2, 2026, have subjected him to progressing "retaliation, misconduct, unnecessary force, verbal abuse, [and] intentions to provoke . . . ." (*Id.*) Plaintiff has elected to go without his religious meals to avoid these correctional officers and filed grievances, kites, and letters seeking help from prison officials. (*Id.*) Plaintiff did not identify in his motion a single instance when he experienced retaliation, harassment, or excessive force from these defendants.

Plaintiff instead attached numerous documents to his motion, which he argues support his request for extraordinary pretrial relief. None of the documents tend to show acts of retaliation, harassment, or excessive force by or on behalf of any defendant. They also do not reflect that prison officials are knowingly and unreasonably disregarding an objectively intolerable risk to Plaintiff's safety from any defendant, let alone that they will continue to do so. Rather, the documents tend to show that Plaintiff misuses grievance and inmate-request processes. The responses advise Plaintiff to "resubmit [his non-emergency grievances] at the informal level" and use the grievance process, not the inmate-request process, for complaints about staff misconduct; advise that his reports of staff-misconduct incidents have been "documented"; and state that he has been scheduled to be seen by a medical provider about reported mental-health symptoms. (ECF No. 9 at 6, 7, 10, 12, 17, 22).

As outlined above and as Interested Party Nevada Department of Corrections ("NDOC") argues in its response (ECF No. 10), Plaintiff's motion suffers from numerous

defects. First, the Court does not have jurisdiction to grant Plaintiff all the relief he seeks because his retaliation arguments are not sufficiently related to the unreasonable-strip-search claim that is proceeding in this lawsuit against Quanttrini and Suwe. *See Pac. Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631, 636–37 (9th Cir. 2015) (explaining that "absent" a "relationship or nexus" between "the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint[,] … the district court lacks authority to grant the relief requested"). Second, the motion does not mention the legal standards outlined above, let alone demonstrate with evidence that Plaintiff is entitled to any relief under them. *See* LR 7-2 (d) (stating, "the failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion" (citation modified)). Third, the relief that Plaintiff seeks—a blanket order for five prison staff members not to retaliate against him—is not proportional to the alleged violation identified in the complaint—unreasonable strip search—and narrowly tailored to address the specific harms as required under the PLRA. *See Armstrong v. Brown*, 768 F.3d 975, 983 (9th Cir. 2014) (reiterating that injunctive relief under the PLRA "must heel close to the identified violation" and courts "may not attempt to micro manage [sic] prison administration" (citation modified)).

Finally, although this Court does not take lightly allegations that prison staff are retaliating, harassing, or using excessive force against prisoner-plaintiffs, this Plaintiff has not shown that any defendant continues to pose a serious threat to his health or safety, and prison officials are "knowingly and unreasonably disregarding" that risk and will continue doing so throughout this lawsuit. *See Farmer*, 511 U.S. at 845–46. Undermining Plaintiff's motion is his lack of allegation, evidence, or argument showing retaliation, harassment, or excessive force by or on behalf of any defendant and his documents, which tend to show that he has not properly used the grievance system to redress his concerns, yet prison officials have documented them and scheduled him to see a medical provider. The motion for a TRO is therefore denied.

## II. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

1. Plaintiff's emergency motion for a temporary restraining order (ECF No. 9) is denied.

2. Plaintiff's application to proceed *in forma pauperis* (ECF Nos. 1, 4) is **GRANTED**. Plaintiff will not be required to pay an initial installment of the filing fee. He is permitted to maintain this action to conclusion without having to prepay any additional fees or costs or give security for them. In the event that this action is dismissed, the full filing fee must still be paid under U.S.C. § 1915(b)(2).

3. Pursuant to 28 U.S.C. § 1915, the Nevada Department of Corrections will forward payments from the account of **JOSEPH PEREZ, #90451** to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10) until the full $350 filing fee has been paid for this action. **The Clerk of the Court will SEND** a copy of this order to (1) the Finance Division of the Clerk's Office and (2) the attention of **Chief of Inmate Services for the Nevada Department of Corrections** at formapauperis@doc.nv.gov.

4. **The Clerk of the Court will electronically SERVE** a copy of this order and a copy of Plaintiff's complaint (ECF No. 6) on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

5. Service must be perfected within 90 days from the date of this order under Federal Rule of Civil Procedure 4(m).

6. Subject to the findings of the screening order (ECF No. 5), within 21 days from the date of this order, the Attorney General's Office will file a notice advising the Court and Plaintiff of: (a) the names of the defendants for whom it accepts service; (b) the names of the defendants for whom it does not accept service, and (c) the names of the defendants for whom it is filing the last-known-address information under seal. As to any of the named defendants for whom the Attorney General's Office cannot accept service,

the Office will file, under seal, but will not serve the inmate Plaintiff the last known address(es) of those defendant(s) for whom it has such information. If the last known address of the defendant(s) is a post office box, the Attorney General's Office will attempt to obtain and provide the last known physical address(es).

7. If service cannot be accepted for any of the named defendant(s), Plaintiff will file a motion identifying the unserved defendant(s), requesting issuance of a summons, and specifying a full name and address for the defendant(s). For the defendant(s) as to which the Attorney General has not provided last-known-address information, Plaintiff will provide the full name and address for the defendant(s).

8. If the Attorney General accepts service of process for any named defendant(s), such defendant(s) will file and serve an answer or other response to the complaint (ECF No. 6) within 60 days from the date of this order.

9. Plaintiff will serve upon defendant(s) or, if an appearance has been entered by counsel, upon their attorney(s), a copy of every pleading, motion or other document submitted for consideration by the Court. If Plaintiff electronically files a document with the Court's electronic-filing system, no certificate of service is required. Fed. R. Civ. P. 5(d)(1)(B); Nev. LR IC 4-1(b); Nev. LR 5-1. But if Plaintiff mails the document to the Court, Plaintiff will include with it a certificate stating the date that a true and correct copy of the document was mailed to the defendant(s) or their counsel. If counsel has entered a notice of appearance, Plaintiff will direct service to the individual attorney named in the notice of appearance, at the physical or electronic address stated therein. The Court may disregard any document received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate showing proper service when required.

10. This case is no longer stayed.

DATED: September 9, 2026

UNITED STATES MAGISTRATE JUDGE